HENRY B. BABSON, APPELLANT, V. CRETE MILLS, APPELLEE.

FILED APRIL 29, 1932. No. 28241.

*Thomas & Vail,* for appellant.

*John E. Mekota, contra.*

Heard before GOSS, C. J., ROSE, DEAN, DAY and PAINE, JJ., and HORTH, District Judge.

DAY, J.

This is an action by Babson, as assignee of the Blue River Power Company, against the Crete Mills to recover for electrical current furnished by the power company to the defendant. The current was furnished under an oral contract, by which the plaintiff alleges the defendant agreed to pay 2 cents per kilowatt hour additional during the "peak load" hours of 6 to 9 o'clock p. m. The defendant questions the amount of current furnished from October to December, 1923, and alleges an accord and

satisfaction upon this item. It is also denied that the agreement provided for an additional charge for current consumed during the "peak load." It admits that it owed plaintiff $636.21 for October, November, and December, 1925, but alleges that upon May 31, 1927, it delivered its negotiable check in full payment, which has been retained.

This cause arose out of a controversy concerning two questions of fact: (1) As to the quantity of current furnished from September, 1922, to December, 1923, and (2) whether defendant was to pay 2 cents per kilowatt hour additional for current used during the "peak load" period.

Incidentally, the first involves the issue raised by the pleadings as to whether the $1,200 check given in payment of the current used was in full settlement of the disputed account. The amount due at that time was in dispute and the parties seemed unable to agree upon the amount. It was settled in the manner of good friends working under an oral contract. Their dealings thereafter were such as to suggest a final settlement. This was a question of fact and must have been determined by the jury against the plaintiff.

The defendant pleaded as a defense the statute of limitations. The plaintiff complains that the instruction submitting this question to the jury was erroneous, for that the defendant contended that each month was a distinct transaction, while the power company claimed that the whole was a running account. However, the case was tried upon the theory by both parties that a new contract either was or was not negotiated in 1924, and both introduced evidence tending to either prove or disprove this issue of fact. There was no prejudice to the plaintiff from this instruction by which the trial court submitted this part of the argument to the jury.

The second controversial point goes to the terms of the agreement. This oral agreement was made between the heads of these two corporations. The executives were good friends. The terms of the agreement must depend upon the recollection of these two men as to many con-

versations over a period of years, some of them taking place ten years ago. They do not agree as to the terms of this oral contract. It is an unsatisfactory and difficult task. The jury had to reach their conclusion by weighing the testimony of these two men in the light of their conduct under the agreement. Upon this question of fact, with evidence in direct conflict, they found against the plaintiff, upon whom rested the burden of proof to establish the contract. The verdict of a jury will not be disturbed in such a case. *Holst v. Warner*, 116 Neb. 208. This rule is so well established that we omit further citation of cases, but refer the reader to any digest.

But the appellant contends that appellee admits owing it $636.21, the amount of the check, delivered and retained since May 31, 1927, and that the verdict should at least have been for this amount. The pleadings and the evidence of defendant admit liability to that extent. Under this situation the trial court should have instructed the jury to return a verdict for that amount. Instead, the court instructed the jury that they should determine whether the check was accepted in payment by plaintiff and that they "should consider all the circumstances and conduct of the parties." The court further instructed the jury that "mere retention of the check by said company does not of itself prove acceptance of the same as payment, but any unreasonable delay in returning the same may make it equal to payment." This view of the trial court finds some support in the case of *Wheeler & Motter Mercantile Co. v. Kitchen*, 67 Okla. 131, L. R. A. 1918C, 160, in which the court in substance said that delay for an unreasonable length of time to return the check will amount to an election to accept the same as payment in full settlement. This might be true if, in addition to retaining the check, the plaintiff had failed to give notice of its refusal so to accept it. But the plaintiff is not subject to the rule announced in the dictum in this case, because the plaintiff refused to accept this check and from the date of its receipt was from time to time trying to effect a settlement upon it up until this action was commenced.

In addition, this check carried a conditional indorsement, requiring it to be accepted, not alone as settlement in full of the account for which it was sent, but also as a settlement in full of all other accounts between the parties. The rule announced in the last cited case is: "But, in our opinion, more than the mere receipt and retention of the check, with knowledge of the conditions under which it was sent, is essential to constitute acceptance thereof as full payment and satisfaction of the debt." See *Groh v. Great Eastern Casualty & Indemnity Co.*, 155 Ill. App. 18; *Emerson v. Gerber*, 178 Mass. 130. An annotation in L. R. A. 1918C, 160, summarizes the rule of the case as follows: "Ordinarily, the mere failure of a creditor to return a check sent him by the debtor in whole or partial payment of the debt does not constitute a payment of the debt, where the creditor does nothing indicating his intention and purpose to receive the check in payment." There are cases which seemingly are contra. In *Conde v. Dreisam Gold Mining Co.*, 3 Cal. App. 583, the maker of a note forwarded a draft for the full amount due thereon, which was received and retained by the payee's general agent, without any notice that the draft would not be accepted in payment, the retention of the draft operated as payment of the note. It has also been held that unreasonable delay in returning a check may make it equal to payment. *Smith v. Miller*, 43 N. Y. 171; *Mehlberg v. Tisher*, 24 Wis. 607. A long unexplained retention of a check tends to show its acceptance with the conditions upon which it was tendered. *Bloomquist v. Johnson*, 107 Ill. App. 154. Many other cases upon this point are to the effect that, where retention and delay cause loss to the maker, the unexplained retention of a check is equivalent to payment; as, for example, where the bank becomes insolvent, but that is not the situation here.

However, this court is of the opinion that the circumstances of this case bring it under the rule of *Wheeler & Motter Mercantile Co. v. Kitchen, supra.* The evidence is not sufficient to support any other finding upon this ques-

tion. Therefore, the trial judge should have directed a verdict for the amount of the check, $636.21.

There being no other error in the case, the judgment as to this is reversed and remanded to the trial court, with directions to enter a judgment for $636.21, and direct clerk to cancel check by judgment, and is affirmed in all other respects.

AFFIRMED IN PART AND REVERSED IN PART.