1998 OK CIV APP 167

**SAINT FRANCIS HOSPITAL,**
**Plaintiff/Appellee,**

v.

**W. Allen VAUGHN, Defendant/Appellant.**

**No. 90849.**

Court of Civil Appeals of Oklahoma,
Division No. 1.

June 17, 1998.

Rehearing Denied Aug. 10, 1998.

Certiorari Denied Oct. 21, 1998.

---

John W. Hunt, Tulsa, Oklahoma, For Appellant.

Daniel M. Webb, Tulsa, Oklahoma, For Appellee.

## OPINION

GARRETT, Judge:

¶ 1 Appellant, W. Allen Vaughn, appeals the judgment of the trial court which was entered after the court sustained a motion for summary judgment in favor of Appellee, Saint Francis Hospital, foreclosing its hospital lien against Vaughn. Vaughn was the attorney for Charlotte Brown, who was injured on December 29, 1994, by a third party tortfeasor. Hospital treated Brown and provided medical goods and services for her in the amount of $6,064.80. A settlement was reached between Brown and the tortfeasor's insurer. The insurance company issued a check, payable to Brown and Vaughn. Vaughn deposited the check in his firm's trust account and then distributed the proceeds to Brown. Hospital contends it filed its hospital lien prior to the receipt of the insurance proceeds. Vaughn contends the lien was not timely filed and was not filed in accordance with statutory requirements. The check was mailed on March 26, 1997, and received by Vaughn "on or about April 1, 1997". Hospital filed its lien on March 29, 1997.

¶ 2 Hospital asserts its lien against the insurance proceeds pursuant to 42 O.S.1991 § 43.[1] The requirements for filing and enforcement of hospital liens are found at 42 O.S. Supp.1994 § 44.[2]

1. Section 43 provides:

Every hospital in the State of Oklahoma, which shall furnish emergency medical or other service to any patient injured by reason of an accident not covered by the Workers' Compensation Act, shall, if such injured party shall assert or maintain a claim against another for damages on account of such injuries, have a lien upon that part going or belonging to such patient of any recovery or sum had or collected or to be collected by such patient, or by his heirs, personal representatives or next of kin in the case of his death, whether by judgment or by settlement or compromise to the amount of the reasonable and necessary charges of such hospital for the treatment, care and maintenance of such patient in such hospital up to the date of payment of such damages: Provided, however, that this lien shall be inferior to any lien or claim of any attorney or attorneys for handling the claim on behalf of such patient, his heirs or personal representatives; provided further, that the lien herein set forth shall not be applied or considered valid against any claim for amounts due under the Workers' Compensation Act in this state. [Footnote omitted.]

2. A. No such lien shall be effective unless a written notice containing an itemized statement of the amount claimed, the name and address of the injured person, the date of the accident, the name and location of the hospital, and the name of the person or persons, firm or firms, corpora-

¶ 3 In his objection to Hospital's motion for summary judgment, Vaughn stated that while the actions constituting the uncontroverted facts are largely in agreement, the legal inferences to be drawn from them are strongly controverted. He alleged the following in his "Uncontroverted Material Facts":

5. Both Plaintiff and Defendant agree that, after Charlotte Brown's attorney, W. Allen Vaughn, received Plaintiff's purported Hospital Lien Statement, he received funds previously disbursed by Prudential Insurance Company, and agree that he thereafter discharged his duties as trustee to his client, Charlotte Brown, by distributing her portion of the insurance settlement funds to her after honoring all validly created hospital liens and settlement agreements.

¶ 4 Vaughn also argued that under the "mailbox rule", (i.e., acceptance is made when mailed), the payment had already been made when the lien was filed. The trial court ordered the parties to supplement their briefs with authority on the issue of "payment" by check. The trial court subsequently entered judgment in Hospital's favor pursuant to District Court Rule 13(e), finding there was no substantial controversy as to any material fact and that Hospital was entitled to judgment as a matter of law. This appeal followed.

¶ 5 The trial court ordered the parties to consider the case of *Liberty Nat. Bank of*

*Weatherford v. Simpson,* 187 Okla. 274, 102 P.2d 844 (Okl.1940), in their supplemental briefs. Simpson deals with whether payment on a promissory note by a check, which was dishonored, was sufficient to constitute payment of a note secured by a chattel mortgage. Relying on other Supreme Court cases, the Court quoted the following rule:

A check, without regard to whether that of the debtor or of a third person, does not constitute payment, unless it is agreed that it shall be taken as an absolute payment.

¶ 6 The Court held that since the burden was on the defendant to establish his plea of payment, and there was no evidence of payment other than the dishonored check, a verdict should have been directed in favor of the plaintiff for possession of the property to satisfy the balance due. The syllabus of the court includes the following:

2. A check, except where expressly given and accepted as such, does not operate as payment of a debt until it has been accepted and honored by the bank on which it is drawn.

¶ 7 This rule of law is in line with 12A O.S. Supp.1992 § 3–310(b)(1):

(b) Unless otherwise agreed and except as provided in subsection (a) of this section, if a note or an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instru-

---

tion or corporations alleged to be liable to the injured party for the injuries received, shall be filed in the office of the county clerk of the county in which such hospital is located, on the mechanic's and materialman's docket, prior to the payment of any monies to such injured person, his attorneys or legal representatives, as compensation for such injuries; nor unless the hospital shall also send, by registered or certified mail postage prepaid, a copy of such notice with a statement of the date of filing thereof to the person or persons, firm or firms, corporation or corporations alleged to be liable to the injured party for the injuries sustained prior to the payment of any monies to such injured person, his attorneys or legal representatives, as compensation for such injuries. Such hospital shall mail a copy of such notice to any insurance carrier which has insured such person, firm or corporation against such liability, if the name and address shall be known. Such hospital shall also

send, by registered or certified mail, a copy of such notice to such patient upon whom emergency medical or other service has been performed, if the name and address of such patient shall be known to the hospital or can with reasonable diligence be ascertained. A copy of said notice shall be mailed to any attorney for the patient, provided that the hospital has notice of the name of such attorney.

B. The liens provided for in this section and Section 43 of this title may be enforced by civil action in the district court of the county where the lien was filed. Such an action shall be brought within one (1) year after the hospital becomes aware of final judgment, settlement or compromise of the claim asserted or maintained by or on behalf of the injured person. The practice, pleading and proceedings in the action shall conform to the rules prescribed by the Oklahoma Pleading Code to the extent applicable. [Footnote omitted.]

ment were taken, and the following rules apply:

(1) In the case of an uncertified check, suspension of the obligation continues until dishonor of the check or until it is paid or certified. Payment or certification of the check results in discharge of the obligation to the extent of the amount of the check; . . . .

¶ 8   It has not been alleged that the insurance check was a cashier's check or other type of certified funds. Thus, until the check was presented to the bank, "payment" did not occur. Vaughn's answer to interrogatories (or request for admissions) shows he deposited the check on April 2, 1997. The lien was filed March 29, 1997 prior to receipt and deposit of the check. Because no presentment of the check had occurred when the lien statement was filed, the check did not constitute payment, and it was error for Vaughn to deposit and distribute the proceeds to Brown. We hold the lien was filed prior to "payment", giving Hospital priority over Vaughn. Acceptance of the check was conditional upon payment, which did not occur before April 2, 1997.

¶ 9   Vaughn's argument seems to be that because the insurance company, the entity responsible for paying Brown, did not receive notice of the hospital lien before mailing the settlement check, Hospital lost its opportunity to file and perfect a lien. Vaughn contends the day he received the check is irrelevant, because when he received it, Hospital could no longer assert a lien. He stated the following in his objection to Hospital's motion for summary judgment:

Because Mr. Vaughn knew that Prudential had accepted his offer of settlement on his client's behalf, thereby extinguishing the hospital's opportunity to create a hospital lien, he was aware that his duty to honor any Hospital Lien, Statements that came into his office after that date in regards to Charlotte Brown's case had passed. It would have been a breach of his duty to his client had he honored a purported Hospital Lien Statement that did not meet the statutory criteria.

¶ 10   Vaughn apparently contends that the only significant date is the date Prudential accepted his offer of settlement on Brown's behalf and mailed the settlement check. However, under the statute, the significant time is "prior to payment" of the claim to the injured party. Thus, regardless of how the issue is stated, the necessary determination in this case is *when* "payment", under the hospital lien statute, is considered to be made. Certainly also, the lien statement must comport with the statutory requirements of 42 O.S. Supp.1994 § 44. We have examined the lien statement filed by Hospital in the County Clerk's office, and we find it does meet the statutory requirements. Also, a certificate of mailing by certified mail is attached, and the appropriate parties are listed.[3] Vaughn had notice of the lien being asserted by Hospital when he received the insurance settlement check made payable to himself and Brown. Because the "payment" to Brown was made after that time, Vaughn should have recognized the validity of the lien.

¶ 11   The remaining propositions of error raised in Vaughn's petition in error were not raised in the trial court, and they are, therefore, waived.

¶ 12   Hospital has filed a motion for attorney fees for appeal related services. The motion is denied.

¶ 13   **AFFIRMED.**

JOPLIN, P.J., and CARL B. JONES, V.C.J., concur.

---

3.   In addition to Brown and Vaughn, the certificate of mailing includes Harbor Insurance, 4200 E. Skelly Dr., Tulsa, Oklahoma. No issue is made that service to Harbor Insurance, rather than Prudential Insurance, was inappropriate.